**E-FILED**
Wednesday, 02 March, 2005  03:00:37 PM
Clerk, U.S. District Court, ILCD

FILED

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

MAR 0 2 2005

JOHN M. WATERS, Clerk
U.S DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHN E. ALLEN SR., )
                    )
          Plaintiff, )
v.                  )
                    )         Case No. 04-1295
MIKE McCOY, STEVE SMITH, )
DETECTIVE FISHER, TONYA GIBBS, )
JEFFREY GUALANDI, )
          DEFENDANTS. )

## MEMORANDUM OF LAW FOR RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Now comes the Plaintiff, John E. Allen Sr., Pro-se, and file this Memorandum of Law For Response In Opposition To Defendants' Motion To Dismiss. The Plaintiff state as follows:

### A. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Defendants alleges that Plaintiff failed to exhaust administrative remedies available in accordance with 42 U.S.C § 1997 e (a). Also, the Defendants points out the following: (1) Plaintiff checked the box on the Prisoner Complaint Form indicating that he was aware of the grievance procedure available at the Peoria County Jail and (2) Plaintiff checked the box indicating that he filed a grievance concerning the facts in this Complaint.

Plaintiff contends that the Inmate Request Form referred to by the Defendants in the Motion To Dismiss, is in fact the official inmate grievance form at the Peoria County Jail for exhausting administrative remedies

(see- Peoria County Jail Inmate Rules, Regulation, and information; hereto-attach with DECLARATION)
Defendants notes that the only relief sought by Plaintiff was to talk to Detective Fisher, and refers to exhibits A and B in this Complaint. Also, Defendants mentioned other exhibits that plaintiff said could be presented, but does not supply any other exhibits to show that he exhausted administrative remedies.

Defendants points out the obvious with regards to applying the requirements of exhaustion of administrative remedies as contained in 42 U.S.C. § 1997e (a) and points out that the Supreme Court has upheld the dismissal of claims for monetary damages even when monetary damages were not available in the administrative proceeding ( Citing, Booth v. Churnier, 121 S. Ct. 1819 (2001) and Massey v. Wheeler, 221 F. 3d 1034 (2000).

With regards to the Defendants contentions, or more succintly put, the red herring put before the court by the Defendants is merely a smoke screen. Plaintiff's life was in danger; yet, Plaintiff did what was necessary and mandated by the Prisoner Litigation Reform Act, and both, Booth v. Churnier, and Massey v. Wheeler. Moreover, Inmate Request Forms are not sent to outside agencies for review, but rather they are sent to Peoria County Jail officials for review and resolve (see- exhibits ▓▓▓▓ hereto-attached, along with Declaration, [ Inmate Complaints,] A, B, C, D, E and page 15, Statement From The Peoria County Correctional Superintendant) therefore, in accordance with Peoria County Jail Inmate Rules, Regulations and Information [Hand book] Plaintiff exhausted administrative remedies. No where in the afore-mentioned handbook is there any mentioning of a time frame for filing a Inmate Complaint. However, it does state that Inmates must be given a response by the designated staff member

within five days (see- exhibit #2 p. 15, Peoria County Jail Handbook). Furthermore, Plaintiff asserts that he did talk with Detective Fisher, who was his initial contact regard the homocide investigation that he was helping to resolve, but that his Inmate Request Form was processed through Peoria County Jail Officials; therefore, the appropriate Jail officials were well aware of his cooperation as well as the contractual hit on his life. Plaintiff further notes that after conversing with Detective Fisher, he (Fisher) talked with the attorney (Bob Gaubas  ) that was representing him at that time, but Detective Fisher understated the seriousness of the circumstances to him. Also, Office of Jail and Detention Standards, Michael V. Velande, Chief, and Specialist Steven Godlock was contacted. Plaintiff has hereto attached upon Motion For Declaration, with supporting affidavits and other pertinent documents which verifies a paper-trail of communications and missives with Peoria County Jail Officials, Mike McCoy, and Steve Smith, requesting that he be moved from the Jail Pod (cellblock) that he was being housed on because he (Plaintiff) feared for his saftey living on that pod.

In Pozo v. McCaughtry, 286 F. 3d 1022, 7th Cir. (2002) Plaintiff did not succeed due to failure to exhaust. The Plaintiff in this instant did exhaust; therefore, his cause is contrast because he did exhaust in compliance with Peoria County Jail rules.

Applying Pozo v. McCaughtry, "The Court of Appeals, Easterbrook, Circuit Judge, held that: (1) Exhaustion of administrative process requires prisoners to complete administrative process by following rules established by State. In this instant, Plaintiff has completed the full gamut of the Peoria County Jail grievance process as noted in Peoria County Jail, Inmate Rules, Regulations, and Information; therefore,

he has exhausted administrative remedies in accordance
with 42 U.S.C. § 1997e(a).

B. **CAPACITY IN WHICH DEFENDANTS ARE SUED**

Plaintiff sought relief in this Complaint, to his
limited Knowledge was apposite. Plaintiff devoid
in depth Knowledge with regards to litigating;
therefore, he did mis-state his intentions with
regards to the relief he sought as stated in the
Relief sought section of this Complaint. Plaintiff
did mis-state that he was suing each individual
in his [her] Official Capacity individually in the
separate paragraphs as described by Defendants.
Moreover, Plaintiff asked for Compensatory damages
and punitive damages as well as any other relief
the Court deems necessary. Further, Plaintiff request
broad latitude because he devoided Knowledge to
make his request clear, but moreso because
he relied on the wisdom and discernment of
the Court for fairness and direction by requesting
"... any other relief the Court deems necessary."
      Plaintiff ▬▬▬▬ referred to the policy and direction
given by Mike McCoy and Steve Smith with regards
to the no contact policy of the Peoria County Jail,
which is strickingly similar to the circumstances and
situation with regards to the Jails' policy. (See - Blom
v. Dellemann, 2004, WL, 12406055 (W.D. Wisconsin)
(citation not reported in Federal Supplement 2d)(Case
No. 03-C-0386-C)

4 of 17

Plaintiff further notes that the relief sought as mis-stated **devoid** meaning, but request broad latitude due to his wanting in legal Knowledge. Plaintiff will not waste the Courts' time by [beating a dead horse], for the issues pertinent shall be addressed in the following sections of this memorandum of law.

## C. PUNITIVE DAMAGES CLAIMS

Defendants noted that punitive damages are not recoverable in lawsuits against local government officials, City v. Newport v. Facts Concerts, Inc., 453 U.S. 247 U.S. 247, 271 (1981), and that Plaintiff claim for punitive damages must be directed to the defendants in their individual capacities. Defendants contends that in a claim against them (defendants) in their individual capacities, Plaintiff, must show 'evil motive' or 'reckless or callous indifference to federally protected rights of others' for punitive damages to be available. Smith v. Wade, 461 U.S. 30, 56.

In addition, Defendants claims that Plaintiff has failed to allege any facts showing any personal involvement or bad motivation by Mike McCoy, Steve Smith and Detective Fisher in the August 12, 2002, incident. Also, that Plaintiff did not allege that any of these three defendants were present when the fight occurred between Plaintiff and other inmates. Defendants

alleges that Plaintiff allege a single action on the part of the defendants, Mike McKoy, Steve Smith, and Detective Fisher. Next, Defendant notes that Plaintiff alleges that Mike McCoy and Steve Smith ordered that correctional officers should not allow plaintiff to intermingle with other inmates (Plaintiffs' Complaint, p. 10). Defendants alleges that no action, ▇ nor any authority to take action in the Peoria County Jail, on the part of Detective Fisher. Defendants alleges that Plaintiff failed to state a claim allowing for the imposition of punitive damages on Mike McCoy, Steve Smith, and Detective Fisher, and the Plaintiffs' claim should be dismissed.

In addressing the defendants claim pertinent to punitive damages, plaintiff asserts that punitive damages are recoverable against Defendants in, both, their individual and official capacities. While defendants contends that punitive damage are not recoverable in lawsuits against local government officials, City v. Newport, Facts Concerts, Inc., 453 U.S. 247 U.S. 247 (1981) and that the claims against the defendants must be brought against the defendants in their individual capacities, and that plaintiff must show 'evil motive' or 'reckless or callous indifference to federally protected rights of others for punitive damages to be available. Smith v. Wade, 461 U.S. 30, 56.

First, applying the standards in § 1983 action alleging failure to protect an inmate from the attack of other

inmates **is** two pronged: 1) The danger to the inmate must be objectively serious, posing a substantial risk of serious harm. 2) the prison official must have a sufficiently culpable state of mind — one of 'deliberate indifference' to inmate health or safety (Haley v. Gross, 86 F. 3d 630, 640-41 (7th Cir. 1996). Also, noted is claims of convicted persons and pretrial detainees are analyzed under the Eight Amendment (Henderson v. Sheahan, 196 F. 3d 839, 844-45 (7th Cir. 2000)). Moreover, defendants purports that deliberate indifference on the part of a correctional officer, the plaintiff must show that the correctional officer 'actually <u>knew of a substantial risk</u> that [another inmate] would seriously harm him,'. Haley v. Gross, 86 F. 3d at 641. Also, defendants purports that the doctrine of respondeat Superior does not apply to § 1983 Suits, and that plaintiff must allege personal acts of defendants. (Antonelli v. Sheahan, 81 F. 3d 1422, 1428 (7th Cir. 1996).

   Plaintiff asserts, that, in essence, the defendants help to make his (plaintiff's) case in Section D and Section E. (Section D. <u>Claims Against Defendants in Their Individual Capacities</u>, and E. <u>Claims Against Defendants In Their Official Capacities</u>) while simultaneously attempting to use the respondeat Superior doctrine to Contradict the claim and cause it to be render invalid.

   Plaintiff further contends that the defendants should be ordered to pay punitive damages, even if it must be

provided for because of violations of his constitutional rights
by the governmental agency and body of the Peoria County
Jail and officials in their individual capacities. Furthermore,
plaintiff argues for damages for the defendants in their
official capacities (Mike McCoy, Steve Smith, and Detective
Fisher) because they are superiors who are responsible for
flawed policies and directions which the Peoria County
Jail is operated by in its daily functions, and Mike McCoy
and Steve Smith make the rule and regulations and the
operational structure for directing the local governmental
body or agency (Peoria County Jail). In addition to
plaintiffs arguement, he moves forward into section **D** and
E and include undisputed facts within the context
of the argument in those sections, which will further
show that the defendants acted with "evil motive" and
"reckless and callous indifference to federally protected
rights of plaintiff, and that the punitive damages
should be awarded to plaintiff.

## D. Claims Against Defendants In Their Individual Capacities

Applying the two pronged standard in § 1983, Plaintiff
asserts that both prongs have been established: First, the
danger to the inmate must be objectively serious, posing a
substantial risk of serious harm, and second, the prison
official ▇ must have a sufficiently culpable state
of mind — one of 'deliberate indifference to inmate

health or safety. (Haley v. Gross, 86 F.3d 630,640-41 (7th Cir. 1996)).

In this instant, plaintiff met the standards of Haley v. Gross, 86 F.3d 630, and since claims of pretrial detainees are analyzed under the objective and subjective components of deliberate indifference applicable under the Eight Amendment (Henderson v. Sheahan, 96 F.3d 839, 844-45 (7th Cir. 2000) Jail officials did actually show deliberate indifference because they (defendants) actually knew of substantial risk that another inmate would seriously harm plaintiff. Haley v. Gross, 86 F.3d at 641, also, [7] Constitutional Law, key 262

> A pretrial detainee alleging deliberate indifference to his needs, as would violate his fourteenth amendment rights, need not show that a prison official acted or failed to act believing that harm actually ▮▮▮▮ befall the detainee; it is enough that the officials acted or failed to act despite his knowledge of a substantial risk of serious harm. U.S.C.A. Constitutional Amendment 14

In Farmer v. Brennan, 114 S. Ct. 1970, 511 U.S. 825 (U.S. Wis. 1994) the Court held

> 1. a prison official may be held liable under the Eight Amendment for acting with "deliberate indifference"

to inmate health or safety only
if he knows that inmates face a
substantial risk of serious harm
and disregard that risk by failing
to take reasonable measures to
abate it.

PP. 1976-1986. Also, Wilson v. Seiter, 501 U.S.
[511 U.S. 826] 294, 298, 111 S.Ct. 2321, 2324, 115 L.
Ed. 2d 271.

Plaintiff was assisting Detective Fisher in resolving
a homocide case, so he (Fisher) knew of the
substantial risk that plaintiff faced, as a informant,
by other inmates. Three days before plaintiff was
actually assaulted, and numerous times before, plaintiff
attempted to contact Detective Fisher, advising the
jail officials that it was urgent to meet with him;
especially, since plaintiff was denied the chance to
talk to the Peoria County Jail Superintendant, Steve
Smith. (See - Exhibit A and B; plaintiffs' Complaint)
which states the seriousness of the circumstances
and wanting to see Detective Fisher and Lt. Briggs,
who had already interviewed plaintiff concerning
the (Chris Rueter) homocide case. Furthermore,
Detective Briggs and Detective Fisher are County
officers who sometimes deals with jail issues
(See: letter marked as exhibit# 1 where
plaintiffs' attorney, Rob Gaubas, spoke with

On August 12, 2002, Gaulandi notified Detective Fisher, and plaintiff requested to be moved from the pod because he feared for his safety. Steve Smith gave Detective Fisher orders to leave it all alone. (see - Exhibit B) & (Exhibit #1) <u>Rob Gaubas</u> Letter (Attorney)

In Exhibit A plaintiff explains that he'd spoke to Detective Fisher, prior to the incident on August 12, 2002, in fear that he would be assaulted, and plaintiff was assaulted approximately a hour later. Plaintiff had made it known to Jail officials (Mike McCoy, Steve Smith, and Detective Fisher) that information had spread around the Jail that he (plaintiff) was cooperating with detectives on the Chris Rueter homocide case. Plaintiff stated on the Inmate Request Form that he was, even, willing to talk to Sergeant Koolman if he had to because the matter was very serious and his safety was at stake. (see Exhibit A, dated 8-13-02).

However, plaintiff should have never been made to return back to the pod (cellblock) alone, after orders for no intermingling order (no contact) had been issued. Plaintiff should have been escorted and protected by Galandi and Gibbs, but they failed to provide the plaintiff with the required protection.

Detective Fisher may not have worked at the Peoria County Jail; however, the request/grievance was written to Jail official Sergeant Koolman, not Detective Fisher; Sergeant Koolman was within the immediate and direct chain of command. (see - Exhibit A, 8-13-02).

With regards to the respondeat superior doctrine not being applicable to § 1983 suits, defendants did act personally (Antonelli v. Sheahan, 81 F. 3rd 1422 (7th Cir. 1996))

**11 of 17**

Specifically, all of the defendants knew about the plaintiff was ordered to be put on the no contact list on the pod (cellblock). The actions, and the failure to act in accordance and within the framework of the Jails' policy and no contact or intermingle order, although flawed, put plaintiff in harms way. Plaintiff also infer that because of his numerous complaints regarding the conditions of confinement, that he had been marked, and the defendants failed to move plaintiff from the dangerous area and circumstance. (see-Exhibits A,E,D_____) For all the reasons herein stated, plaintiff request that his claims not be dismissed against the defendants.

E. **Claims Against Defendants In Their Official Capacities**

Plaintiff is suing the local governmental body (Peoria County Jail) served by officials (Monell v. Department of Social Services, 436 U.S. 658 (1978)., and Since official capacity claims [are usually] based on policies and procedures promulgated by the officials in charge of the governmental operations, and discrete instances can give rise to official Capacity claims.

12 of 17

Plaintiff is not attempting to apply the doctrine of respondeat superior, but has alleged personal acts and directions of the defendants in this claim (Antonelli v. Sheahan, 81 F. 3rd ■ 1422, 1428 (7th Cir. 1996)).

Plaintiff contends, "on several occasions... the Court has held that 'deliberate indifference' of Constitutional magnitude may occur when prison guards fail to protect one inmate from an attack by another." [FN 7] See, e. g., Roland v. Johnson, 856 F. 2d 764, 769-70 (6th Cir. 1988)".... here the Jury affirmed that defendants violated plaintiffs' eight amendment rights by failing to protect one inmate from [being Killed] another. In this instant, plaintiff received serious injuries to his eye■ and impaired his vision and received thirteen stitches to a head injury. Furthermore, with regards to deliberate indifference, plaintiff address' supervisory liability:

C. Supervisory liability, failure to train, Walker, Administratrix of Estate of Jerry Fails, v. Steven Norris and Michael Dutton, 917 F. 2d 1149 (6th Cir. 1990) [7][8] "The Supreme Court formally recognized the failure to train theory as a basis for § 1983 liability in City of Canton, Ohio v. Harris, 489 U. S. 378, 388, 109 S. Ct. 1197, 1197, 1204, 103 L. Ed 2d 412 (1989)

13 of 17

" Even with the Supreme Court limiting its application to cases'where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come in contact.'"[FN 10] (footnote omitted) Although, the Supreme Court noted that ... `"deliberate indifference'" standard [the Court] adopt for § 1983 "'failure to train'"claims does not turn upon the degree of fault ... that a plaintiff must show to make out an underlying claim of a Constitutional violation." 'In Harris, 489 U.S. at 388 n.8 109 S. Ct. at 1204 n. 8.

> Thus, the "deliberate indifference'" standards governs all failure to train claim regardless of whether the underlying constitutional violation is a fourth amendment transgression Judged by an "'objective reasonableness'" test, an eight amendment transgression subject to evaluation under a '"deliberate indifference'" standard, or some other constitutional violation reviewed under a difference Standard.

Although, the Court focus'on the adequacy of the training program in relation to the tasks the particular officers must perform ... and that ... particular [officers] alone suffice to fasten liability on the city ...." Plaintiff contends that it was, both, (1) failure to train and (2) the inadequacy of a program and mechanism in place to protect inmates [protective custody] other than the same 'lock back' [segregation] pods [cell block].

14 of 17

Although plaintiffs' injuries could have been avoided
if a adequate mechanism was in place — and it
would still require adequate training of employees
[Tonya Gibbs, Jeffrey Gualandi] (correctional officers)
so that they are knowledgable of how to protect and
exercise preventative measures. Even more, Peoria County
Jail policies are insufficient and allow a broad perimeter
and great opportunities for harm to come inmates who
are in need of protection and safety. Even with the
hypothesis in Harris, 489 U. S. 109 S. Ct. 1197 (1989)
plaintiff cites Cavalieri v. Shepard, 321 F. 3d 616, ■
(7th Cir. 2003) at [1] Constitutional Law, Key 262

> A pretrial detainee alleging deliberate
> indifference to his needs, as would
> violate his fourteenth Amendment
> rights, need not show that a prison
> official acted or failed to act believing
> that harm actually would befall
> the detainee; it is enough that the
> official acted or failed to act
> despite his knowledge of a
> substantial risk of serious harm.
> U. S. C. A. Constitutional Amendment 14.

In Farmer v. Brennan, 114 S. Ct. 1970, 511 U. S.
825 ( U. S. Wis 1994) the Court held

> 1. A prison official may be held
> liable under the Eight Amendment

15 of 17

for acting with "deliberate indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

PP. 1976-1986. Also, Wilson v. Seiter, 501 U.S.[511 U.S. 826] 294, 298, 111 S. Ct. 2321, 2324, 115 L.Ed. 2d 271.

Plaintiff was assisting Detective Fisher in resolving a homocide, so he knew of the substantial risk that he faced as a informant. Moreover, although the jail official had instructed a order to subordinates (employees) working the jail pod (cellblock) that plaintiff not be allowed to intermingle with other inmates and which was written on a board and in a log, but the policy itself is flawed because it enforces a method that does not train its staff in a way to protect inmates from assault; nor, does it assign a place to house inmates who face danger of assault from other inmates.

Plaintiff had continued to submit Inmate Request Forms, which he made it clear that he knew of not only a implied threat, but that a actual contractual hit had been ordered against him. (See:

Plaintiff asserts that Detective Fisher played a great role in the accumulative circumstances that caused plaintiff to be put in harms way and inevitably assaulted by other inmates. Steve Smith and Mike McCoy are directly in charge of formulating the policies in question and also failed to ensure that the policies were effective for providing the safely and health of inmates detained at the Peoria County Jail. Therefore, all claims against defendants (Mike McCoy, Steve Smith, Detective Fisher, Tonya Gibbs, and Jeffrey Gualandi) must not be dismissed. Plaintiff humbly prays that this Honorable Court rule in his favor. not to dismiss any of the claims against any of the defendants herein.

RESPECTFULLY SUBMITTED,
John E. Allen Sr., pro-se, plaintiff

By: /s/ John E. allen Sr.
John E. Allen Sr., pro-se, plaintiff
Pontiac Correctional Center
P.O. Box-99
Pontiac, Illinois 61764

17 of 17

# APPENDIX

Page 19 of 38

dog. It shows that other people had to contact him and that the jail would not allow me an attorney...
... even got this letter until the day I was to leave
my trial on aug 29, 2002 the day I took the plea agreement. Mr. Daubas had been calling every sense
the 14th of aug. The day after my injury yet the jail would not give me any messages or allow me to
use the phone. Any contact to him was by phone through other inmates at the jail and by letter. These
inmates called my girlfriend to contact Mr. Daubas. Sharon Bradford. at this
time my wife was
being denied visits
to see me. was told
I did not have a wrist
band so she would not
see my eye. I later
spotted my I D band
on the steps of the

**John Allen , (EXIBIT 1)**

8-17-02

I received your letters from this past week, yesterday.

I spoke to Sharon Bradford and Harry Sonnemaker on Tuesday, August 13, 2002.

offices corridor to there
Control Center taken
out of my cell by
Sargent Clazen, do you
rp Dqunaldi, they
day I went to see the
outside doctor on the
3rd of aug. along with
legal civil court documents.
I was told was contraband.
I was supose to return to
see this specialist on
aug 21st 2002 and was
not taken. I found out
later. The next day I
got the              transfer
was to Ill, F.D. O.C.
I knew then I was
being denied all my
rights, after I was
forced to return to a
special cell by Doug.
Johnson, D.C.S. Buck
Bucannon and will
smith after I was
placed in a suicidal
cell and wanted to stay
there because it was
monitored by a
4 hr. Camera.
On this day I returned
from the doctor approx
1:00pm I was never
given a mess. that mr.
Daubas had called or for
me to call him this
would have been on
8-13-02 after several
attempts of asking jail
management to Call
my attorney. I never
seen or heard from mr.
Daubas. until I received

After speaking to Sharon Bradford, I put several calls to Peoria County Sheriff's Office employees and I tried to make an appointment to see you Tuesday afternoon. I was informed you were at a doctor's office receiving treatment for the injury you received last weekend but the jail said they would give you a message to call me. I still haven't received any calls.

As I told Sharon Bradford, Detective Fisher called me back to say he was not conducting an investigation into the incident where you were injured but he had spoken with Superintendent Smith after my call and he said he was told that you had written First Assistant States attorney Nancy Mermelstein a letter with some information and she gave it to a Defendants attorney on discovery. Fisher said the Defendants attorney apparently gave the letter to the Defendant who is at the County Jail

his letter after he told me he had called and written to me on the day I took the plea agreement. After I had been hurt having to wear a patch over my eye. My only way to contact him was through other inmates. The following week after my eye had healed a little my wife was allowed to see

– 2 –

and he then began to inform other inmates about the letter.

I have never seen the letter and I don't know what was in it. However, as you know, I have attempted several times in the past several months to speak with Nancy Mermelstein about different matters, seeking some assistance for you, and each time I have been informed she was not interested in your cooperation on these matters. I would suggest no further letters to anyone in the States Attorneys Office and that any future attempts to speak to someone from that office be done confidentially and in person with an attorney present for you.

I asked Det. Fisher about your injuries when I spoke to him on Tuesday. He assured me you were not seriously injured and said you were at a doctors appointment that day to be checked over. Obviously, if you received 13 stitches for a wound your injuries were more than what he described.

I saw your request for another hearing for Emergency Medical Treatment. I will prepare a Motion and speak to the witnesses you suggested. We will need to be able to prove you are in need of treatment you are not receiving at the jail for the Motion to have any chance of being successful.

-3-

I have not heard back from you on the questions I asked weeks ago of whether you want to appeal the rulings on the bond reduction motions we have made in the past, and whether you want my assistance to attempt to obtain any psychological or psychiatric records the Department of Corrections may have concerning past evaluations of you. I will take no action on these matters until I hear from you.

I spoke to my employer, Thomas Penn, on Tuesday, August 13, 2002, concerning the matters which took place in Courtroom 210 on Friday, August 9, 2002. He has suggested I continue to represent you for now. But, he has said he would appoint a different assistant Public Defender if you or I believed that was necessary.

I am willing to continue to work with you on the cases where the Public Defender has been appointed in Courtroom 210. However, I will not participate in any attempts to harass or intimidate the prosecutors in the courtroom, even when the judge is not on the bench and court is not in session.

Enclosed with this letter is a copy of the Grand Jury transcript you mentioned in one letter.

Sincerely,

Bob Daalos

EXIBIS (A)

## INMATE REQUEST FORM

THIS IS WHEN I FOUND OUT THERE WAS A HIT ON ME FOR WRITTING A STATE MENT TO ASSt. STATES ATTORNEY Nancy murmistion ABOUT THE Christopher RUTTER MURDER CASE. AFTER Dec. Fisher & Lt. Briggs INTER-Viewed me AND SENT me Down TO peoria police TO TALK TO TWO CITY DeTECTiVes onebeing DeTECT. LeTBeTTER AND Det. Nowland, STEVE smith AND Det. Fisher WAS AWARE OF me my ENSURY ON 8-12-02 (See EXiBiTS. "O" & I)

I am interested in, or have a question about:

( )  Programs (GED, Recreation, AA, etc.)
( )  Religious services/counseling
( )  Classification
( )  Inmate Disciplinary Procedures
( )  Department Superintendent of Programs & Services
( )  Jail Chaplain
( )  Services/Classification Director
( )  Department Superintendent of Operations

( )  Other _____

TO: Dect. F. Sher .                                DATE: 8-9-02

FROM: John Allen                        CELL BLOCK: H- 4/6

COMPLAINT OR PROBLEM: DeTECTiVE THis Is THE THird Request I HAVE SENT TO you, I HAVE even AsKeD Sugt. Smith TO FORWARD you A mess. I cant place my TSTFolmation on PAPER AND Need TO See you right AWAY. Will you please See me BeFORE ITS TO LATE.

SIGNATURE: Rev. John E. allerds.,  Rev. John Allen SR.
               **(written)**                              **(printed)**

## RESPONSE

TO: _____          DATE: _____

_____

_____

_____

_____

SIGNATURE: _____   TITLE: _____

DATE OF MY INJURY STEVE SMITH Reply/S TO 1OUTHER ISSUE

EXIBITS (A)

**INMATE REQUEST FORM**

I Grieved TO Him ON OFFICERS AND my aTTempts To Stop THE FighT From HAppening wiTH me AND oTher INMATES THAT I New would HAppen on my Hour out that Day, He states Im a manipulaTOR only ITEREsTED IN using people, He INSIST I AM ProVoking His officers EVEN AFTer my many complaints on His officers

I am interested in, or have a question about:

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations

( · ) Other _____

THis Jail Sup. JUST ReFUSED TO HelP me AS DeT. Fisher TOLD my ATTORNEY DuRing A phone CAll (Please see LeTTer wriTten TO SohN Allen) ENClOSED wriTTen By ATTORNEY AT LAW (Robert GauBAS)

TO: STeve Smith                    DATE: 8-12-02

FROM: JOHN Allen                   CELL BLOCK: H-4-6

COMPLAINT OR PROBLEM: I would Like TO MAKE A complaint ON one OF your officers, BeFore something HAppens THAT Im SuRe I will geT Full Blame FOR. THings ARE HAppening DowN Here THAT NeeDs your ATTenTion AND you Keep over looking Them. ARE you AwaiTing FOR one oF your OFFicers To HurT me OR me HURT one oF Them By Trying To DeFend myself BeFore you will Look INTO THis MATTER. I'm TRying To Head THis OFF BeFore They happen You'r Dic's. Won'T Respond To my Pequest AND NieTHer will your SARgents. I Don't

SIGNATURE: Rev. John F. allen H.  /  Rev. JOHN Allen SR.

(written)                          (printed)

know How Humble A person musT Be To geT JusTice Done Herein THe Peoria County Jail, LORD Knows IVE Been THAT AND THis IS my 4TH ATTempT. To TAlk To you Sense July 25 2002, you'r eXcuse oF me THreaTing you HAS Been your eXcuse, well I never Recieved A discipline **RESPONSE** any TickeT FoR such A THreat, I'm Haveing problems AND you ARE Fully AwARe OF THem,

TO: John Allen                     DATE: 8-14-02

You are making every effort to provoke the officers - especially a couple you have picked out. You are a manipulator only interested in using people and collecting money. Churches have complained that you've started soliciting them.

SIGNATURE: A. Amato               TITLE: Jail Supt.

Exhibits "A"

# INMATE REQUEST FORM

I am interested in, or have a question about:

( )  Programs (GED, Recreation, AA, etc.)
( )  Religious services/counseling
( )  Classification
( )  Inmate Disciplinary Procedures
( )  Department Superintendent of Programs & Services
( )  Jail Chaplain
( )  Services/Classification Director
( )  Department Superintendent of Operations

( )  Other _____

---

TO: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓          DATE: 8-13-02

FROM: JOHN ALLEN          CELL BLOCK: ▓▓▓▓▓

COMPLAINT OR PROBLEM: Look THIS HAS gone FAR enough Now
I spoke with Detectide Fisher yestery Evening IN Fear
WHAT HAppen LAST knight WAS ABOUT TO go oN AND IT
DID, Now I DoNT write you ofTEN, Now Im Asking you TO
see me or get message TO Dec. Fisher THAT I Need
TO see Him Right ANAY, Word IS Around THE Jail Now oN IN-
FormATioN I gave Him would you please send me Response TO My que-

SIGNATURE: John F allen Jr.    /  JOHN ALLEN SR.

THere's NO WAY **(written)** I canT STAY in THis ▓▓▓ **(printed)** THE I HAVE TO ▓▓▓
TO you ABout IT THEN Fine Look ▓▓▓▓▓ THis IS NOT A game, THis IS
▓▓▓▓▓ buISNESS, ATTEMTAKIN TO my PARENTS + Realize THAT I HAVE TO
Do WHAT I need TO DO, IF ▓▓▓ **RESPONSE** else please get A HoldOF Fisher
AND LET Him ▓▓▓▓ ? REIgn - ? see Him!

TO: _____    DATE: _____

_____
_____
_____
_____

SIGNATURE: _____    TITLE: _____

f:\julie\dataword\forms\form01.doc  ( 3M ~ 3/2002 )

-exibit As
SARgent coolmens Response AFTER Steve Smith Said I must go through
chains of command

# INMATE REQUEST FORM

Day AFTER Incident ON 8-12-02

I am interested in, or have a question about:

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations

( ) Other _____

---

TO: ~~John Allen Sr.~~          DATE: 8-13-02

FROM: John ~ Allen          CELL BLOCK: ~~B-upper~~

COMPLAINT OR PROBLEM: Look THis HAs gone FAR enough Now
I spoke with Detective Fisher yesterday Evening IN Fear
WHAT HAppend LAST knight WAS About To go oN AND IT
DID. NOW I Dont write you OFTEN, Now I'm Asking you To
see me. or get message To Dec. Fisher THAT I Need
To see Him Right AWAY, WORD IS Around THE Jail NOW ON IN-
FORmation I gave Him would you please send me Response To my ques.

SIGNATURE: ~~John E allen sr~~   /   JOHN ALLEN SR.
            (written)              (printed)

THeres NO WAY I can'T STAY in THis spec. IF I HAVE To TAlk
To you About IT THEN Fine Look Coolmen, THis IS NOT A game, THis IS
serious Buisness. AFTER TAlking To my PARents + Realize THAT I HAVE To
Do what I Need To Do. IF NOThing else please geT A HolD OF Fisher
AND Let Him know ITS Elgent I see Him!

## RESPONSE

TO: _____          DATE: _____

Detective have been notified
someone will talk to you

SIGNATURE: _____    # _____

EXHIBIT A

## INMATE REQUEST FORM

anouther attempt
TO TALK TO DeTec. Fisher
3 Days AFTER MY INJury
AND AFTER I Spoke TO Him
IN person ON 8-12-04 Right
BeFoRe I WAS HuRTo I CouLD

I am interested in, or have a question about:

( )  Programs (GED, Recreation, AA, etc.)
( )  Religious services/counseling
( )  Classification
( )  Inmate Disciplinary Procedures
( )  Department Superintendent of Programs & Services
( )  Jail Chaplain
( )  Services/Classification Director
( )  Department Superintendent of Operations

( )  Other _____

GET No one TO TALK TO me
So I WROTE TO MY ATTORNEY who
DiD TALK TO DeT. Fisher, AND WROTE
me A LeTTER TO THe Jail ON whAt
THere ConVerSation WAS ABouTo THe attorney
WAS RobeRT GauBus. MY AsST. PubliC
DeFenDeR. (see His LeTTER EnFLuDeD)
(EXiBiT 2)

TO: DeTec. Fisher                    DATE: 8-15-02 (EXiBiT 1)

FROM: John Allen                     CELL BLOCK: G-SPeC

COMPLAINT OR PROBLEM: I'm STARTiNG TO Feel Like I'm Being
AVoiDeD, A D.CSi ToLD me THeY DiD NOT want
To GeT IN VoLVeD, Koolman SaiD Someone WouLD See
me on THe 14Th. when will we Meet again
we MUST AND NOT DowN STaiRs PLease

SIGNATURE: _John E. allen_  /  _John ALLeN SR._
                (written)                      (printed)

## RESPONSE

TO: _____    DATE: _____

_____

_____

_____

_____

SIGNATURE: _____    TITLE: _____

f:\julie\dataword\forms\form01.doc  ( 3M ~ 5/2002 )

EXHIBIT ("B")

# INMATE REQUEST FORM

I am interested in, or have a question about:

( )   Programs (GED, Recreation, AA, etc.)
( )   Religious services/counseling
( )   Classification
( )   Inmate Disciplinary Procedures
( )   Department Superintendent of Programs & Services
( )   Jail Chaplain
( )   Services/Classification Director
( )   Department Superintendent of Operations
( )   Other _____

NOTE! AFTER Steve Smith Said He "would Not meet with me again, To go Through The Chain OF CommanD FIRST, This Violates whAts STATED IN THE INMATE Rule Book THAT HeiD Respond To ANY WRITTEN Request.

EXIBIT (A) REQuest To SARGent Koolman Day AFTER Fight who DiD Contact Fisher who SettLED MATTER WITH MY ATTORNEY Rob. GAubAS MR. GAubAS HAS A LetTER ENCLOSED WRITTEN To plain-TIFF, STATING Fisher STATES STEVE SMITH would NOT look INTO 8-12-02 MATTER ANY FURTHER !

Please Refer TO ENClosed LetTER (EXIBIT I)

TO: LT. CApT. Briggs

DATE: 8-9-02

FROM: John Allen

CELL BLOCK: H-4-6

COMPLAINT OR PROBLEM: Mr. Briggs, I HAVE ATTEMPTED To Contact Dec. Fisher Since our lAST meeting, Its Urgent THAT I TALK TO your Lin RIGHT AwAy. I CANT get STEVE SMITH TO EVEN meet WITH me AT ALL. I Need To See SOME ONE BEFORE Its To LATE PLEASE. THIS MATTER IS RATHER SERIOUS AND CONCERNS THE CHRIS VOGTER MURDER CASE, ITS All I CAN PUT ON PAPER!

SIGNATURE: John E. allen H.   ,   JOHN E. ALLEN SR.
              **(written)**                    **(printed)**

---

## RESPONSE

TO: _____   DATE: _____

EXIBITS (B)

## **INMATE REQUEST FORM**

Heres where I wrote to "D.C.S." "Pearl Smith" The morning BeFoRE my INJURY AS SooN AS I FounD out I WAS going To Be Jumped when I came out FoR my hr. out.

I am interested in, or have a question about:

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations
( ) Other _____

onle again I Did go THrough proper Channels AND ATTempTED TO TO exhaust ADMiN. Rimidies, I AlSo wrote to SARG. koolmon The NexT Day 8-13-02 see Request To HiM AND His Respones That HAS His signaTuRe AND BADGE Num. # 314 (EXiBiTS (A))

TO: __Pearl Wilson__          DATE: __8-12-02__

FROM: __John Allen__          CELL BLOCK: __H-4-6__

COMPLAINT OR PROBLEM: Can you please see me monday moerning I Really neeD To TAlk To you. I DonT want someThing To HAppen ISee IT comming AND woulD like To HeaD IT OFF. Im TiReD oF being ignored By 2nD AND 3RD ShiFT, I AlSo will neeD noTeR/AND Copies when I come Down To FilE legal work, Im Asking you

SIGNATURE: Rev John Allen    /    Rev John Allen
            (*written*)                (*printed*)

## **RESPONSE**

TO: __John Allen__          DATE: __8-11-02__

If I get time Monday are Real Busy Days. Can Not Promise!

SIGNATURE: _____          TITLE: _____

f:\julie\dataword\forms\form01.doc  ( 3M ~ 5/2002 )

*[handwritten top-left annotation]* Steve, Smiths Response To me on other Incidents at the Jail 2 Days Before my Injury

*[handwritten top-right annotation]* "ExiBiT D" For THe RecorD THese Documents show I MADE Several ATTempts TO TAlk TO Jail officials, He personally sTATes He Beleaves NoTHing I say!

# INMATE REQUEST FORM

I am interested in, or have a question about:

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations

( ) Other _____

TO: Steve Smith          DATE: 8-10-02

FROM: John Allen          CELL BLOCK: H-4-6

COMPLAINT OR PROBLEM: Tony Foulkner was Taken From His Cell of H-4-1 Tonight By C/o Houk, C/o Brandinburg and C/o Shipp All of seg. shift. LATer on 3RD shift C/o mccoy ReTurned This inmate to his cell I was told THAT C/o mccoy smelled very much like liqurre AND Admitted to Have Been Drinking, To my understanding C/o mccoy said many THings ABout me warning This inmate THAT I was Trouble. I HAD nothing To say or Do with foulkners incident will you please insTRucT C/o mccoy TO STOP BAD mouthing me something He's Been Doing

SIGNATURE: _____
(written)

For monTHs now, I Am Also STill awaiTing your response on why He was Allowed I put His Hands on me, AND STill Allowed To Be ARound me ...

## RESPONSE

TO: John Allen          DATE: 8-12-02

I have no faith in your credibility. you need to communicate with one of the OCS's from now on.

SIGNATURE: *[signature]*          TITLE: Jail Supt.

f:\julie\dataword\forms\form01.doc  ( 3M ~ 5/2002 )

THis is THE DAY AFTER my INJURY ON
8-12-02 I MADE Several
ATTempts To exHaust ADMIN **INMATE REQUEST FORM**
REMidies (BeFoRE) **EXIBIT D**

I am interested in, or have a question about:

I WANT WHAT I'm
suppose To geT, AND I
WANT my LegAl Federal
CivAl PAPERS BACK So I CAN
Send THem Home, IF you'r OFF.cers
WERE SMART THEy WouId of TAKEN
OUT THE CARBON PAPER AND LEFT
THE ReST, AS THEy All KNow I DON'T
NEED ANy ONE y mr, S... eleAn my Room, You
one Ts, pleA... , or at mosTe SoMe
BeTweeN us AND LETS TALK, you HAV
To much SecuriTy To Keep Deny.ng me
A ViSiT. WHAT CAN... Do To you in HAAB
CUFFS AND ResTRAiNTS, your OFF.cers NOT on
STARt A loT oF TRouble, THEy Also deny everyThing I WANT my
PAPERS BACK ?
sEnd Home,

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification AFTER
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain WiTH THis
( ) Services/Classification Director
( ) Department Superintendent of Operations
( ) Other

TO: STeve SmiTH.                        DATE: 8-13-02

FROM: JoHN AlleN                      CELL BLOCK: G-spec

COMPLAINT OR PROBLEM: As I HAVE SAiD To you BeFoRe your Fear of Seeing
me is THE Fear of Hearing THE TRUTH AND you KNow THis, you SAy DeAl wiTH
D.C.S. well NONE will SEe me AfTER several RequesT, Now I go PAST
you To THE SheriFF. I'm Being Denied my RighTs Such as NoTARies, LegAl
Copies, ANd Now your 2Nd SHiFT OFF.cers HAVE TAKEN legAl DocumenTs ouT
my cell THAT I WANT BaCk TO Send Home, your OVER looKing A loT mr SmiTH
**I've AlReADy goTTEN HURT AND No oNe HAS ASKED How, THeres No Reason
FoR me To Be iN ResTRAinTs leaving my cell AND you KNow THis I HAVEN'T**
SIGNATURE:
HURT ANyone, AND I cAN T (written) DiD JT'S BeCAuse THEy PRovoKed me (printed) iNTo IT BuT I
KNow I HAVENT, CAMERAS DONT Lie mr.SmiTH AS you KNow, I will SAy THE
DiFFeRENCE BeTween mike miccoy AND you WheN He HAD your JoB IS HE
WAS FAiR.
He DiD NOT OVER looK or Allow SomeoF THESE OFF.cers To ConsTanTly VioLATE N
INMATES RighTs KNow.ng THEy CouId **RESPONSE** Be. Now I KNow you BRoKe THiS I...
AND IT'S A PluS FoR me, wHEN I HAVE To leAve my cell iN REsTRAiNTS So I wiLL

TO: _____              DATE: _____

_____

_____

_____

_____

_____

SIGNATURE: _____        TITLE: _____

ConTinue To PlAy your game FoR Now, BuT I wANT WHAt my RighTS SAys
I Can HAVe. la.. LibRARy, Legal CopieS wHEN I TAKe THEm ANd iN ViSiTs iN winnER
Will someoNe Do.s righT wHeel my sAFE MORE To ViSiT, I'm HURT mr, SmiTH,
isN'T THAT enough FoR you or ARE you looKiNg FoR your OFF.cers To ReAlly
HURT some one.

(Response AFTER my
INJURY on 8-12-02)

**INMATE REQUEST FORM**

EXIBIT D 1"

I am interested in, or have a question about:

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations
( ) Other _____

I want what I'm suppose To get, AND I want my Legal FeDeral Civil papers back so I can send Them Home. IF you'r officer were smart They wouiD of Taken out The carbon paper AND Left The Rest, As They All know I Don't Need Any one To clean my Room, You Slipping mr. SmiTH, or aT kosTe some one Is, please stop This maddness beTween us AND leTs Talk, you HAve To much securiTy To keep Denying me A VisiT. WhaT can I Do To you in HAND cuffs AND RestRainTs. You'r officers NoT oN START AloT of Trouble, They Also Tell everyThing I want my papers back, send Home.

TO: STeve SmiTH                    DATE: 8-13-02

FROM: JoHN Allen              CELL BLOCK: G-Spec.

COMPLAINT OR PROBLEM: As I HAve SaiD To you BeFore you'r Fear oF Seeing me is The Fear of Hearing THe TRUTH AND you know THis, you SAy Deal wiTH DCS, well Nonce will See me AFTER Several Request, Now I go PAST you To THe SheriFF. I'm Being DenieD my RighTs Such as NoTARies, Legal Copies, AND Now you'R 2nD ShifT Officers HAve TAken Legal DocumenTs ouT my cell ThaT I want Back To SenD Home, you'r over looking A loT mr SmiTH. I've AlReaDy goTTen HurT AND No one HAs AskeD How, THere's No Reason for me To Be in RestRainTs leaveing my cell AND you Now THis, I HAven'T

SIGNATURE: X _____

HURT Anyone, AND I (written) piD ITs BecousE They provaked me inTo IT BuT I know I HAvenT, CAmeRas Don'T Lie mr. SmiTH As you know, I will SAy THe DifFeRence BeTween mike mccoy AND you WHen He HAD your Job Is He WAS FAir. He DiD NoT over Look or Allow some of TheSe OFFicers To ConsTanTly VioLaTe InmaTes RighTs know, ing They CouiD **RESPONSE** Be. Now I know you orDerD THis AND IT's A PLus FoR me. WHen I HAve To Leave my cell IN RestRainTs so I will

TO: John Allen                 DATE: 8-14-02

I'm tired of all of your nonsense. I didn't order anything. Please communicate with a DCS or with ACS mcCoy. NOTE! meeting HelD wiTH Rob mcCoy IN 2002 beFore I.D.O.C. Transfer on 8-22-02, Second meeting on eye INJury Also wiTH Rob mcCoy AND SARgenT LoudaviphHelD Almost 14 mos. LATER AT P.C.J! ExhaubTion oF Remines! WAR Done!

SIGNATURE: N. Smith          TITLE: Jail SupT.

Continue To Play you'r game FoR Now, BuT I wanT what m/ RighTs SAys I Can HAve. lawS LiBRary, Legal copies when I NeeD THem AND my VisiTs, in whinch I WAS DenieD Tues nighT when my wife came To VisiT, I'm HurT mr. SmiTH SnT ThaT enough FoR you or ARe you looking FoR You'r OFFicers To Really hurT someone.



**Illinois**
Department of
**Corrections**

**George H. Ryan**
Governor

**Donald N. Snyder Jr.**
Director

James R. Thompson Center / 100 W. Randolph Street / Suite 4-200 / Chicago, IL 60601 / Telephone: (312) 814-3017 / TDD: (800) 526-0844

August 28, 2002

John Allen, B00298
Stateville Correctional Center Reception Center
Route 53, P.O Box 53
Joliet, Illinois 60434

Dear Mr. Allen:

On August 20, 2002, the Office of Jail and Detention Standards received your second complaint in two months. Your complaint letter postmarked August 15, 2002, included the same contents written in your letter dated June 11, 2002, with the exception of one.

Criminal Justice Specialist Steven Godlock investigated your complaints dated June 11, 2002. On June 19, 2002, this office forwarded you a response while you were detained at the Peoria County Jail. This office will not re-investigate complaints already acknowledged. However, Criminal Justice Specialist Steven Godlock investigated your new allegations of August 15, 2002.

On August 22, 2002, Mr. Godlock conducted an investigation into your most recent allegations. You were not available to be interviewed because you have been transferred to the Illinois Department Correction that morning prior to Mr. Godlock's arrival.

In your absence, Specialist Godlock interviewed Superintendent Robert McCoy and DCS Cheryl Smith. You wrote that you were involved in a fight with another inmate and allege that as result of the fight, you received a black eye and stitches. You also allege that jail security staff further agitated the injury.

DCS Smith provided Specialist Godlock with incident reports dated August 12, 2002, which state you were involved in a fight with detainee Timothy Purdle. The reports further state that after the fight occurred, you taunted jail staff, threw a bloody rag in Officer Duhan's face, and received medical attention as a result of the fight. Your allegations that jail staff agitated an injury received in the fight and lack of medical attention were unfounded.

There will be no future investigations conducted on frivolous accusations or issues previously investigated.

Sincerely,

Michael V. Velarde, Chief
Office of Jail and Detention Standards

cc: Sheriff Michael D. McCoy
Specialist Steven Godlock

When I FIRST WROT #LT. Briggs Who IS NOW
CAPTIAN Briggs, THIS IS How All THIS STARTED
Where DeT. Fisher, Nawland, & **INMATE REQUEST FORM**
leTTbetTer comes IN. AND ~~The leTTer~~ TO ASST. STATES

I will NOT SPEAK
TO ANY OFICErs or
ANY SARGENTS, I WONT
Speak TO anyone OUTSIDE OF

I am interested in, or have a question about: ATTOrNY
( Nancy murmistien) YOU OC STATES ATTORNEY
murmustion my INFORmation

( ) Programs (GED, Recreation, AA, etc.)
( ) Religious services/counseling
( ) Classification
( ) Inmate Disciplinary Procedures
( ) Department Superintendent of Programs & Services
( ) Jail Chaplain
( ) Services/Classification Director
( ) Department Superintendent of Operations
( ) Other _____

IS JUST That VALUAble,

EXIBIT "O" START OF
INTIRE INCIDENT
THAT STARTED ON 7-18-02
AND ENDED WITH ASSAULT ON
PlaintiFF INMATE JOHN ALLEN!

TO: LT. Briggs _____ DATE: 7-21-02

FROM: John Allen _____ CELL BLOCK: Ch-2-2

COMPLAINT OR PROBLEM: LT. Briggs THIS IS AN Emergncy NOTE
To you. I need TO see you right Away, I HAVE InFormation
ON A murder IN which one oF THE suspects HAS Been HERE
For OVER 6 mos. THE Second suspect IS NOW IN CUSTODY
Her in Jail TRying To Bond out Before IT'S found out who he really
IS, STATES ATTORNEY murmustine is over This CAse, I HAVE VALUAble

SIGNATURE: Rev John F. allen U., Rev JOHN ALLEN SR.
(written)                                    (printed)

INFORmation She needs I wont SPEAK TO anyone outSide oF you
Her, or my ATTORNEY Rob BauBAS, Tolomis THIS will NOT Be A WASTE oF your
ime, Please contact her Tell her I can Help Her get THE 2nd suspect IN
THE Chris Reuter Case IT'S **RESPONSE** worTH IT TO TAIK TO me.

TO: _____ DATE: _____

_____
_____
_____
_____

SIGNATURE: _____ TITLE: _____

f:\julie\dataword\forms\form01.doc ( 3M ~ 2/2002 )

(EXIBT #2)

# PEORIA COUNTY JAIL



---

## INMATE RULES, REGULATIONS,
### and
## INFORMATION

---

**Charles R. Schofield**
**Sheriff**

**Michael D. McCoy**
**Chief Deputy**

**Steven S. Smith**
**Correctional Superintendent**



**301 N. Maxwell Road**
**Peoria, Illinois 61604**
**(309) 697-8515**

---

f:\julie\datawordsformat\form173 lg.doc (10/99) (2001)

**NG**

als with bond money on their person will be booked before
ho must wait for bond money to be brought to the Jail.
/ho must go to court to have their bond set by a judge will
ed last.  Bond payment can be made in the form of cash,
ard, money order, or certified check.  Before an inmate is
l, the cell and issued items will be inspected for cleanliness
1age.

## RAMS AND SERVICES

lowing schedule is an approximate daily schedule.
- c times are subject to change.

    Wake up and recreation for selected pods begin
700    Showers and cellblock cleaning begin
    Breakfast
    Court Monday-Friday and sick call Monday-Sunday begins
    Church services begin Sunday
    Educational classes and counseling programs begin
    Visiting Saturdays
    Cell block cleaning ends
    Lunch
    Court resumes Monday-Friday
    Commissary Wednesdays begins
    Dinner
    Visiting begins Sundays and Tuesdays
    Night lockup

## ATE REQUEST FORMS

mber of programs and services are available at the Jail. If you
    information about any of these programs, or if you have a
:ion that the pod officer cannot answer, fill out an inmate
:st form. The bottom half of the form will be used by jail staff
ve you an answer in writing.  All three copies must be attached
1 submitted.  If you require medical attention, ask the pod
er for a sick call form.  After the completion of any of these
1s return them to the pod officer for delivery.  Inmate request
1s can be used to correspond with any jail staff member.



## INMATE DISCIPLINARY PROCESS

It shall be the policy of the Peoria County Jail to have written rules for inmate conduct, which lists the violations, and the penalties that may be imposed for them. Adhering to this system of rules will help promote the security and orderly operation of the facility. Inmates will be given a copy of the Jail rules and Regulations Book during the admittance process.

## DISCIPLINARY HEARING BOARD

A disciplinary hearing board will be appointed by the Sheriff and/or the Jail Superintendent to review all cases where tickets have been written relating to inmate violations of the jail rules.



## APPEALS PROCESS

There shall not exist any inmate right of appeal to a disciplinary hearing board decision. The appeal process is automatic, due to the review by the jail Superintendent of all hearing board decisions.

## CRIMINAL PROSECUTION

Any violation of the established inmate rules and regulations which also is a violation of the laws of the State of Illinois will also cause a copy of the report to be forwarded to the Peoria County States Attorneys' office for prosecution. Any rule violation which is also a violation of the Federal Law will cause a copy of the report to be forwarded to the appropriate Federal Agency.

## ADMINISTRATIVE SEGREGATION



Inmates who require special housing to ensure the safety and security of the facility, themselves, or the safety of inmates in general population will be placed in Administrative Segregation.

Page 14

## INMATE COMPLAINTS



A. Complaint limitations – Complaints are only <u>valid if they allege that services are substandard</u> or that a rule, regulation, or officers' conduct is improper.

B. Filing of a Complaint – <u>All complaints must be written on an inmate request form and signed by the inmate and will be forwarded as addressed.</u>

C. Response to Complaints – All complaints will be answered by the designated staff member within <u>5 days.</u>

D.) Appeals – <u>An inmate not satisfied with the response to a complaint may, by using an Inmate request Form, ask that the answer be reviewed by the Correctional Superintendent.</u> *Mike was By Bob mccoy e Cudavish*

## STATEMENT FROM THE
## PEORIA COUNTY CORRECTIONAL SUPERINTENDENT

The Administration and Staff of the Peoria County Jail are committed to operating a safe and secure facility. Fair treatment of those incarcerated will always be expected of Jail personnel. Likewise, inmates are required to be respectful to staff or to any other person providing services at the jail. Dedicated and trained staff members are not interested in judging you as an individual, but will use a firm and fair disciplinary system if needed. If you need to ✱ correspond with me concerning a change in Jail policy, use the Inmate Request form. Any reasonable complaint will be considered, but my decision will be final.

Some of the programs and services available at the jail are your right, such as adequate food service and proper medical attention. Many of the programs are not rights. They are privileges that you will have to earn, and your behavior will determine how many of them you enjoy. Your time at the Peoria County Jail will be what you make it.

Steven S. Smith
Correctional Superintendent
Peoria County Jail

# Contents

Motion For Response In Opposition To Motion To Dismiss
With Certificate of Service. . . . . . pp. 1 of 2, 2 of 2

Memorandum of law For Response In Opposition To
Defendants' Motion To Dismiss, . . . . . pp. 1 of 17
through 17 of 17

■
Motion To Submit Declaration With Supporting
Documents And Exhibits, With Certificate of
Service. . . . . . pp. 1 of 2, and 2 of 2

Declaration . . . . . . . . . . . . . . . . . .

Appendix . . . . . . . . . . . . . .
With Exhibits: A, B, C, D, E, and page #15,
Peoria County Jail, Inmate Rules, Regulations and
Information (Handbook), Exhibit #2, p.15 (Handbook)
Exhibit – letter marked Exhibit #1 (Attorney Rob
Gaubas) & EXiBiTS (O), Also PAGES 1, 4, 14 OF Jail HanD
Book,